1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ------------------------------x
                                        18-CR-538(MKB)
3    UNITED STATES OF AMERICA,
                                        United States Courthouse
4              Plaintiff,              Brooklyn, New York

5              -against-               December 7, 2021
                                        10:30 a.m.
6    NG CHONG HWA,

7              Defendant.

8    ------------------------------x

9         TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
                    ALL PRESENT VIA TELECONFERENCE
10            BEFORE THE HONORABLE MARGO K. BRODIE
               UNITED STATES CHIEF DISTRICT JUDGE
11

12   APPEARANCES

13   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
14                            271 Cadman Plaza East
                              Brooklyn, New York 11201
15                            BY:  DREW GODFREY ROLLE, ESQ.
                              Assistant United States Attorney
16
     For the Defendant:      BRAFMAN & ASSOCIATES, P.C.
17                            256 Fifth Avenue - Suite 2nd Floor
                              New York, New York 10001
18                            BY:  MARC AGNIFILIO, ESQ.
                                   JACOB KAPLAN, ESQ.
19                                 TENY GERAGOS, ESQ.

20

21
     Court Reporter:         LINDA D. DANELCZYK, RPR, CSR, CCR
22                            Phone:  718-613-2330
                              Fax:    718-804-2712
23                            Email:  LindaDan226@gmail.com

24

25   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                                2

1              (In open court; All present via teleconference.)

2              THE COURT:  Winnie, please call the case.

3              THE COURTROOM DEPUTY:  Criminal cause for status

4    conference.  Docket Number 18-CR-538.

5              Persons granted remote access to proceedings are

6    reminded of the general prohibition against photographing,

7    recording, and rebroadcasting of court proceedings.  Violation

8    of these prohibitions may result in sanctions, including

9    removal of court issued media credentials, restricted entry to

10   future hearings, denial of entry to future hearings, or any

11   other sanctions deemed necessary by the Court.

12             Counsel, starting with the government, please state

13   your name for the record.

14             MR. ROLLE:  Good morning, Judge.  You have Drew

15   Rolle, Alix Smith, Dylan Stern from the U.S. Attorney's

16   Office.  We also have Jennifer Ambuehl and Brent Wible from

17   DOJ in Washington.

18             THE COURT:  Good morning.

19             MR. ROLLE:  Good morning, Judge.

20             MR. AGNIFILIO:  Yes, good morning, Your Honor.  For

21   the defendant, Mr. Ng, you have Marc Agnifilio, Teny Geragos

22   and Jacob Kaplan.  And we are here with our client altogether.

23   Good morning everybody.

24             THE COURT:  Good morning.  And good morning, Mr. Ng.

25             So I've reviewed the parties' submissions with

PROCEEDINGS                                    3

1    regard to the motions *in limine*.  I have not fully gone

2    through the government's motion, but I've looked at Mr. Ng's

3    motion.

4                So first I want to start with that, and I want to

5    find out whether or not the parties have attempted to work out

6    the witness list and exhibit issues, as well as the 3500

7    issues.

8                MR. ROLLE:  Your Honor, this is Drew Rolle for the

9    record.  We spoke, I think as requested in counsel's letter

10   from last night.  We have discussed with them the production

11   of 3500 and, in fact, we did begin producing 3500.  We intend

12   to keep doing so on a rolling basis.  There is a lot in this

13   case, so in our view it makes sense to produce even earlier I

14   think than what counsel had requested, and so we're going to

15   continue doing that on a rolling basis.

16               I don't know if that answers counsel's question in

17   his letter, but that's the government's intention, and I think

18   we'll continue to produce as we head to trial.

19               As to the witness list.  I think that we intend to

20   produce it ahead of trial in sufficient time.  I don't

21   think -- we currently have six weeks, but I think our 3500

22   production and any discussions we have about those with

23   counsel, and I think we're happy to continue discussing the

24   people identified in the 3500.

25               I think that sort of answers the question counsel's

PROCEEDINGS                              4

1    raised, because we'll actually be producing the statements of

2    witnesses, even if there are additional people on the list and

3    for whom we have not yet produced 3500.

4                THE COURT:  And what about the exhibits, counsel?

5                MR. ROLLE:  I think that we are working on our --

6    finalizing our exhibit list now, and I think we can get that

7    to counsel a month before trial.

8                THE COURT:  So the trial starts on, I believe it's

9    January 18th, correct?

10               MR. ROLLE:  I think jury selection is on the 18th,

11   Your Honor, and openings will be on the 24th.

12               THE COURT:  I do realize the holidays are the last

13   week in December and the first week in January.  I don't

14   anticipate that many people will be diligently working those

15   two weeks, maybe I'm wrong about that, but when you say four

16   weeks in advance, are you referring to the first week in

17   January or are you referring to the last week of December,

18   Mr. Rolle?

19               MR. ROLLE:  Yes, Your Honor, the last week of

20   December.

21               THE COURT:  And that last week will be the week

22   between Christmas and New Years.

23               Is there any reason why you couldn't get those

24   documents to counsel by the week prior, the week of the 20th

25   of December?

1          MR. ROLLE:  I think we're picking that date sort of

2     forecasting where we are and how many exhibits that we will

3     need to physically be marked, you know, electronically.  We

4     will endeavor to do that even before then, if it can be done

5     before Christmas, potentially some partial amount and, again,

6     the full amount of evidence is substantial would have to be

7     produced after that point.

8          So I just have to say, I think looking at the

9     calendar that week towards the end of the year looks feasible,

10    so we can continue discussions with counsel and hopefully get

11    it out before then.

12         THE COURT:  Before the end of December?

13         MR. ROLLE:  Yes.

14         THE COURT:  And is that true for both the 3500

15    material and the exhibits?

16         MR. ROLLE:  I think it's certainly true as to the

17    exhibits that we discussed.  On the 3500, there may be --

18    we're still getting more.  I think we'll have the lion's share

19    of it out.  I think there are some that -- not all the 3500 is

20    situated similarly, some of it is sensitive for a number of

21    reasons and we wanted to have an opportunity to discuss with

22    counsel for our plan for some of that more sensitive 3500,

23    which may come closer to trial.

24         THE COURT:  Putting aside the sensitive matter that

25    you don't want to disclose early, can the rest of it be

PROCEEDINGS                                    6

1    disclosed by the end of the month?

2                MR. ROLLE:  Yes, Your Honor.

3                THE COURT:  Okay.  Turning to Mr. Agnifilo.

4                MR. AGNIFILIO:  Yes.  Thank you, Your Honor.

5                We have been discussing this with the government,

6    and I think we have a slightly different view of the 3500.

7                They've given us a fair amount of raw material but

8    it's in the nature of individuals who I don't think are

9    remotely relevant and are highly unlikely to be witnesses, we

10   think.

11               You know, we don't think we have any of the 3500

12   people who seem to actually be witnesses at the trial, so it's

13   really no -- not much news to us to get 35 -- the so-called

14   3500 for people who are not likely to be witnesses.  And so,

15   you know, the cooperator or certain other people who I think

16   they're actually going to call, we don't have any of that.

17               And the sort of immediate concern that we discussed

18   with the government in our call last night that I'll just

19   raise with the Court, I have finally found a way to get to the

20   Far East later this week, and I told the government this

21   yesterday, and we were really hoping to be a little further

22   along with the 3500 and the trial exhibits, because I'm not

23   going to get a second chance to do this.

24               It's very difficult to do as it is with COVID

25   restrictions, and I just found a way, at long last, and so

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

1    this really does have a practical effect.  Not so much that I

2    would go and interview the government witnesses.  I don't

3    think in a million years I would do that.  But there are

4    certain relevant aspects of our investigation that I really

5    can only do when I have a better feeing of what the 3500 and

6    the exhibits would be.

7            And so the problem, unfortunately, is I'm going to

8    be doing this and taking the one and only trip, you know, to

9    the Far East to prepare for this trial at a time when we don't

10   have any 3500 of any of the people who are going to be

11   witnesses, and we don't have any of the exhibits.  So -- and

12   we don't have a witness list.

13           So, you know, I know Your Honor has limited ability

14   to order these things, and we really appreciate what Your

15   Honor wrote in Your Honor's order that you encourage, and you

16   urge the government to do this six weeks ahead of time.

17           Our view is that six weeks ahead of time of the

18   trial is today, and we're picking a jury six weeks from today.

19   And so our view is we should have been further along with the

20   3500 and the exhibits and the witness list than we are.

21           And we appreciate, you know, the dialogue we've had

22   with the government.  I think it's been productive.  I think

23   we've been able to keep a lot of things away from being

24   motions and we've worked a lot of things out on our own.

25           But this is a very big trial, and we're especially

PROCEEDINGS                                  8

1    hampered by the fact that all of these events, for the most

2    part, took place in other countries, and once I take this trip

3    and I am back, I don't think I can go again.  So there are

4    certain practical issues in this trial that I think make the

5    discovery all the more important to have, you know, six weeks

6    before the trial, as Your Honor indicated in Your Honor's

7    order.  So that's our position, Judge.

8            THE COURT:  Thank you, Mr. Agnifilo.  And as you

9    know and acknowledged it, there is very little I can do on

10   this front, but what I can do is encourage you to speak to the

11   government, specifically as to who you intend to interview and

12   try to see what, if any, information you can obtain from the

13   government with regard to those specific individuals.

14           I assume you won't mind sharing the plan on

15   interviewing abroad for purposes of trying to get the

16   government to accommodate you further.

17           Mr. Rolle?

18           MR. ROLLE:  Thank you, Your Honor.  And, yes, we're

19   happy to continue to discuss with counsel.  We're happy to

20   have that conversation with him.

21           I wanted to just put on the record, as Your Honor I

22   think is aware from our prior filing, just in response to

23   Mr. Agnifilio's point, I don't think any of these factors are

24   unique to this case; if anything, I think in this instance six

25   weeks out from trial, counsel and the defendant have a clear

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    9

1   view of the proof to be offered at trial.

2           Whether they have the witness' statement of facts,

3   they have the facts, and in part, they have more than that,

4   because one of the witnesses had said, as mentioned today, we

5   have produced voluminous discovery beyond Rule 16 in the form

6   of 3500 for the entire laptop, phone, (audio interference)

7   countless (audio interference) and any ordinary thing would be

8   produced (audio interference).

9           We have endeavored and to fully (audio

10  interference).  We're not trying to hide this all in this

11  case, so we're happy to engage with counsel, and we do intend

12  to continue producing 3500 on a rolling basis.

13          To the extent counsel may have a different judgment

14  of the information contained in our rolling production that

15  they may be is not irrelevant, we're trying not to make that

16  determination from our view but to turn over what may be

17  relevant to testimony or potentially cross-examination

18  material, and we will continue to make that raw production as

19  discussed before, Judge.

20          THE COURT:  Thank you, Mr. Rolle.  And as I

21  indicated, why don't you discuss with Mr. Agnifilo the

22  witnesses that you plan to go interview so that you can

23  accommodate him as best as you can to make this trip as

24  fruitful as possible so that we can have a fair trial at the

25  end of the day.

PROCEEDINGS                                                    10

1         I think we've resolved those issues.  At least I

2    encourage the parties to continue to speak to each other.

3         Mr. Agnifilo, you're traveling next week or this

4    week?

5         MR. AGNIFILIO:  Later this week, Your Honor.  And

6    I'll be -- I'll be there for probably a little over a week.

7         THE COURT:  Okay.  So why don't you continue your

8    conversation with the government as to the specific witnesses

9    you plan to interview and attempt to gather additional

10   information for that purpose.

11        MR. AGNIFILIO:  Thank you, Your Honor.

12        THE COURT:  Will the parties please mute their

13   lines.

14        Can we move on to your application for a hearing.

15   As you acknowledged, Mr. Agnifilo, that is not something that

16   we typically do in the Second Circuit.  Why do you believe it

17   should be done in this case?

18        MR. AGNIFILIO:  Yes, Judge.  As we put in our memo,

19   it is not typically done in the Second Circuit.  And I know

20   I'm not arguing this to the Second Circuit at the moment,

21   obviously, but I don't know that the Second Circuit really

22   comes down on the right side of this issue.

23        And I think as a practical matter, more pressingly,

24   the problem I think we're going to run into is in the middle

25   of a witness' testimony, the government will put in, you know,

PROCEEDINGS                                    11

1   what could be a hearsay statement or could not be a hearsay

2   statement based on the coconspirator rule.

3        And I feel honestly it puts the Court in a difficult

4   position and counsel in a difficult position of having to rule

5   on very important evidence, really taking things on face, to a

6   certain extent, you know, that the government is going to say,

7   well, this person's a coconspirator and this is a statement

8   made in furtherance of the conspiracy during the time span of

9   the conspiracy.

10       And the Court and counsel almost have no choice but

11  to accept that as true.  And that doesn't seem to be what --

12  the Court in *Bourjaily*, and we sort of allude to this in our

13  papers, seems to contemplate a Rule 104 hearing for the

14  admissibility of coconspirator statements.

15       And I think the way the practice has developed in

16  the Second Circuit and other circuits, and quite frankly the

17  majority of the circuits, there's really only two circuits

18  that hold the appearing pretrial is a matter of expediency,

19  but I don't know that it really helps our, "I'll get to the

20  best answer," and I think it also doesn't allow the Court to

21  have a preview of the issues that are going to be coming up

22  during the trial.

23       I mean, one of the things that I think the parties

24  in this case are trying to do is to make sure that we

25  telegraph to the Court if something is going to be an issue;

PROCEEDINGS                                    12

1    you know, that's why we write letters the day before just so

2    the Court can have them.  And we always have conferences the

3    day before a court conference so that we can conference things

4    with the government and really make things easier for Your

5    Honor.

6              And I feel like what we're requesting would make

7    things easier for the Court, and it will make things easier

8    for counsel as well, because we would have an idea before the

9    trial started.  And I'm not saying it has to be exhaustive.  I

10   would not be in a position of saying, Well, hey, Judge, maybe

11   they didn't put this coconspirator's statement on their list,

12   because that wouldn't be fair to me, and trials have a way of

13   taking on, you know, lives of their own, and I know how that

14   can be.

15             But I do think it really benefits the process to

16   have some idea of what the very, very important

17   coconspirator's statements are, because this is a large --

18   this is not a discrete, three-member drug conspiracy, this is,

19   you know, a vast alleged conspiracy with the conspirators

20   quite literally all over the globe.  And so it seems to me to

21   be the kind of thing that the Court and the parties would

22   benefit from some form of notice of what the nature of these

23   coconspirator statements -- proposed coconspirator statements

24   will be.  So that's the basis for the request.

25             Your Honor is quite right, as we, I think we even

PROCEEDINGS                                    13

1   left this in our papers.  This is not typically done in the

2   Second Circuit, but the Court has great discretion in how Your

3   Honor's trial will be conducted.  And I think Your Honor's

4   absolutely free, if Your Honor thinks this would be helpful to

5   the Court to form some mechanism for this happening, whatever

6   it might be.  I don't even think it necessarily has to be a

7   hearing per se.  I think it could be a notice position.  And

8   not necessarily an all-encompassing notice position.

9           You know, just so everybody has an idea of the

10  nature of this evidence, and we're not dealing with it on the

11  fly, as so often happens.  But in certain other cases it's a

12  little more apparent because the number coconspirators are

13  less, and the complexity of the alleged conspiracy is not

14  quite as pronounced as this particular case.

15          So when we are thinking about how to make the trial

16  I think easier and fairer, at least from the defense

17  perspective, we realize we think that Rule 104 has a procedure

18  for this, and we encourage Your Honor to exercise the Court's

19  discretion and fashion some type of remedy so that the Court

20  and the parties can all be on notice what coconspirator

21  statements could be coming our way.

22          THE COURT:  So you believe with their turning over

23  the 3500 material that you'll have all of this information,

24  Mr. Agnifilo?

25          MR. AGNIFILIO:  The problem -- well, I suppose the

PROCEEDINGS                                    14

1  3500 could help.  I don't think we have any true 3500, because

2  I don't think any of the actual witnesses we have statements

3  for.  So I do think that could help, Your Honor.

4          THE COURT:  What I anticipate is that the 3500

5  material will make that clear to you as to what the

6  coconspirator statements are, and you can challenge those at

7  that point in time.

8          Certainly, you would have that information prior to

9  the testimony of every witness, and we can build in to the

10 trial date, either at the start of the trial date or at the

11 end of the trial date, an opportunity for each side to

12 challenge any evidence that is being presented in the

13 courtroom so that we're able to view it outside the presence

14 of the jury without wasting their time.

15         MR. AGNIFILIO:  Your Honor, I think that that's

16 actually quite fair.  And that is -- that is acceptable to us,

17 and we thank the Court for indulging us on that.

18         THE COURT:  I take it the government has no

19 objection to Mr. Agnifilio?

20         MR. ROLLE:  No, Your Honor, thank you.

21         THE COURT:  Okay.  I think that leaves us with --

22 are there any other substantive issues, other than the

23 government's motion *in limine*, which I don't need to review in

24 detail before I hear from the parties on that?  Are there any

25 other substantive issues before turning to procedural issues

PROCEEDINGS                                          15

1    as to the trial?

2               MR. AGNIFILIO:  This is Marc Agnifilio, Judge.  I

3    think there's one issue that may or may not be a substantive

4    issue.

5               We -- the parties have been discussing the jury

6    charges for potential Malaysian crimes that are part and

7    parcel of Count Three, the money laundering count.  And during

8    our conference call with the government last night, I asked

9    the government, and they were good enough to say that they

10   would provide an answer.

11              If the grand jury actually charged certain

12   particular Malaysian criminal offenses as part of the money

13   laundering charge, and the government said they would let us

14   know, and if that's the case, then there's really no further

15   work that needs to be done on this.

16              If the grand jury didn't charge specific Malaysian

17   offenses as part of the money laundering offense, then we may

18   want to write a short, I think we can probably keep it to less

19   than five pages, a letter brief to Your Honor on that.  And I

20   do think -- and so there's that issue, Judge.

21              THE COURT:  That's perfectly fine, counsel.  And

22   I'll give the government an opportunity to respond in writing

23   also.

24              Anything further before we turn to figuring out the

25   jury selection?

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    16

1          MR. AGNIFILIO:  Nothing from the defense, Judge.

2          THE COURT:  Mr. Rolle?

3          MR. ROLLE:  Nothing from the government, Judge.

4          THE COURT:  Okay.  So we're still figuring out the

5     logistics of trial.  As you can all appreciate, I expect that

6     the trial will be either in my courtroom or that of

7     Judge Chen.  In all likelihood, it might be her courtroom

8     because her courtroom is set up in a specific way that I think

9     would accommodate this trial in particular because there are a

10    number of, I assume, electronic and paper evidence.

11         In terms of the jury -- I'll let the parties know in

12    advance exactly which courtroom it is.  Judge Chen's courtroom

13    is on the fourth floor, in the same location as to where my

14    courtroom is on the sixth floor of the north side of the

15    building.

16         Both courts are set up with the electronic evidence

17    to be presented, and all of the evidence be presented

18    remotely.  And counsel will have the opportunity to visit

19    whichever courtroom it is that we end up using.  But if you

20    were to visit one, the exact same circumstances are the same

21    for the other courtroom.

22         In terms of jury selection, that will be done in the

23    ceremonial courtroom, in all likelihood.  What I'll do is I'll

24    have the jury department bring in approximately 50 jurors for

25    the morning and 50 in the afternoon.

PROCEEDINGS                                      17

1          We'll seat the 50 in the ceremonial courtroom.

2     We'll give them all a number from 1 to 50, and that will be

3     their number throughout.  So in other words, we won't be

4     changing numbers that -- like we normally would do during

5     normal jury selection.  I will give opening remarks and ask

6     *voir dire* questions of the 50 jurors in the ceremonial

7     courtroom.

8          If there are answers that I need to follow up on, I

9     will simply -- and I'll ask the parties to assist with this,

10    and my law clerks will also record the number.  And after

11    questioning all 50 jurors, I will move them to the two

12    courtrooms on the second floor next to the ceremonial

13    courtroom.  And those are Courtrooms 2E and 2F; 25 in each

14    courtroom for purposes of distancing.

15         We'll then bring in -- and this will all be assisted

16    by my courtroom deputy and the law clerk -- we'll bring in

17    each juror individually and follow up, as is necessary.  And I

18    will likely ask the 10 or 15 biographical questions at that

19    point in time of each individual juror.

20         I'll have the juror wait outside.  So in a sense,

21    the jurors will be moved around but not the parties.  The

22    parties, the court reporter, and myself will remain in the

23    ceremonial courtroom throughout this proceeding.

24         We'll bring the jurors in individually.  We'll

25    excuse them as necessary for cause until we reach the magic

1    number, at which point the parties will be able to exercise

2    their challenges.

3              If we do need to, if we go through those 50 that are

4    brought in in the morning, we'll go on to the second panel,

5    the afternoon panel, and we'll start the process all over

6    again.

7              In all likelihood, I'll have those jurors numbered

8    from 51 through 101 so that there's no confusion with regard

9    to juror numbers.

10              And I'll make sure the parties have the list of the

11    jurors with their number.  And I think that list also

12    includes, in addition to their name, their county, and maybe

13    the area in the specific county where they're from.

14              In terms of the trial days, I am flexible, and I'll

15    ask the parties to confer and decide on how best you would

16    like to proceed.  While I'm happy to sit from 9:30 in the

17    morning until 2:30, with a half-an-hour lunch break, that does

18    make for a slightly shorter trial day as opposed to sitting

19    from 9:30 or 10 in the morning until 5 in the afternoon with a

20    one-hour break for lunch, and a 10- or 15-minute break, or a

21    half hour in the morning and in the afternoon.  If it's a

22    shorter day, 9:30 to 2:30, then it's only a five-minute break

23    and a half-an-hour break for lunch.

24              So I'll let the parties discuss that, and you can

25    propose to the Court which is your preference.  I'm happy to

PROCEEDINGS                                    19

1   do either.

2          As for sitting on Fridays, I haven't fully decided

3   that yet either.  It may make sense to do so.  On the other

4   hand, if I sit a full day every day, I do need to follow up

5   with other matters on a Friday.

6          So if we do a 9:30 or 10 to 5 p.m. day, then in all

7   likelihood I won't sit for the trial on Friday so that I could

8   handle all my other matters on Friday.

9          In terms of mask wearing and operation in the

10  courtroom.  As of now, we are still requiring everyone to be

11  masked in the courtroom.

12         After the jurors are selected, we can then inquire

13  as to their vaccination status.  If they are all vaccinated,

14  then we can go back to seating them in the jury box; if

15  they're not, they will be seated in the back of the courtroom,

16  and the witness will be in the jury box.

17         But if we can sit the jury back in the jury box and

18  put the witness on the stand.

19         The witness during testimony can remove their mask.

20  We will provide just a plexi enclosure so that the witness can

21  testify without a mask.

22         The attorneys and anyone sitting at counsel table,

23  to the extent everyone is vaccinated, you can sit closely

24  together, less than six feet apart, but you're still required

25  to wear your mask.

PROCEEDINGS                                    20

1          The attorneys can, I believe, I believe there's

2     specific guidance, and we will be speaking with the

3     epidemiologist next week, so I'll have updated guidance.

4          The attorneys can remove their masks when

5     questioning the witness or when -- definitely when addressing

6     the jury for opening and closing statements.  And what we'll

7     use is a similar box to what we'll use for the witness when

8     you're doing that, so you don't have to wear a mask.

9          And I think that applies also when questioning the

10    witness.  That guidance has changed over time.  At one point

11    we were not allowing attorneys to do that.  So I'll provide

12    you updated information on that.  But when you're addressing

13    the jury, you have to be masked.  I'm hopeful that by January.

14          (Court reporter interrupts.)

15          (Pause in the proceedings.)

16          (Whereupon, the record was read.)

17          THE COURT:  When you're addressing the jury, you can

18    be unmasked.  I am hopeful that by January maybe we will have

19    updated guidance if everyone in the courtroom is vaccinated

20    that we won't need to be masked, but as of now, we're still

21    requiring everyone to wear a mask in the courtroom regardless

22    of vaccination.  But I'll keep the parties updated on any

23    changes to that.

24          Is there anything that I did not discuss?

25          MR. AGNIFILIO:  Not --

PROCEEDINGS                                          21

1          MR. ROLLE:  All right.  Go ahead, Marc.

2          MR. AGNIFILIO:  No, no, I'm sorry, Drew, you go

3    first.

4          MR. ROLLE:  I actually had one thing to flag, Your

5    Honor, as to the courtroom, to the extent that it's relevant

6    to the position of where we would be.

7          We do expect that there might be testimony from

8    witnesses remotely, and I just sort of, after discussing

9    internally, I think that requires us, at least for those

10   witnesses who are remote, to be in a courtroom that is wired

11   in a particular way.

12         I'm not sure -- I know one recent trial where I

13   think Judge Azrack's courtroom had remote testimony

14   capabilities.  So I just want to flag that that is also one

15   requirement.  And we're happy to move, if necessary, but I

16   just want to flag that for Your Honor.

17         THE COURT:  I'll confirm with IT, but I believe

18   those courtrooms are wired and can accommodate that, but I'll

19   confirm that.

20         Mr. Agnifilo?

21         MR. AGNIFILIO:  I have nothing else, Your Honor.

22   Thank you.

23         THE COURT:  Okay.  So unless there's anything else

24   for us to discuss today, I am going to adjourn this matter for

25   another status conference date prior to trial.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    22

1          I'm looking at the calendar now.  How about we meet

2     on the 21st of December?

3          MR. ROLLE:  That's fine for the government, Your

4     Honor.  Thank you.

5          MR. AGNIFILIO:  This is Marc Agnifilio.  I can do

6     that as well, but I am in front of Judge Matsumoto at 11:00.

7     If we can do 10:00, that will be good.

8          THE COURT:  We can do 9, if you would like.

9          MR. AGNIFILIO:  That's fine, too, Judge.

10         THE COURT:  Okay, why don't we make it 9 a.m. on

11    Tuesday, December 21st.  And hopefully I'll have updated

12    information for the parties by then.

13         I expect that I would have reviewed the government's

14    *in limine* motion as well, and we can discuss that then.

15         Have a great day everyone.  We're adjourned.

16         MR. AGNIFILIO:  Thank you, Your Honor.  Thank you

17    everyone.

18         MR. ROLLE:  Thank you, Judge.

19         (Whereupon, the matter was concluded.)

20

21              *    *    *    *    *

22    I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.
23

24    s/ Linda D. Danelczyk              December 14, 2021

25        LINDA D. DANELCZYK                      DATE

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*