# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

256 FIFTH AVENUE, 2ND FLOOR

NEW YORK, NEW YORK 10001

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN
———

MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ZACH INTRATER
OF COUNSEL

ANDREA L. ZELLAN

JACOB KAPLAN
ADMITTED IN NY & NJ

TENY R. GERAGOS
ADMITTED IN NY & CA

March 8, 2023

VIA ECF

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   United States v. Ng Chong Hwa a.k.a Roger Ng, 18 Cr. 538 (MKB)

Dear Chief Judge Brodie:

The defendant offers this very brief letter in response to the Government's sentencing memorandum, filed on March 3, 2023. (ECF 229.) We ask the Court to consider three points: First, that regardless of the size, nature, scope and effects of the charged bribery conspiracy, the maximum statutory sentence for the crime of bribery under the Foreign Corrupt Practices Act is five-years incarceration. Second, that while the Government claims a harsh sentence is needed because of the effects of the 1MDB theft on the people of Malaysia, the Government itself concedes that the Government of Malaysia has been made whole as a result of the fines and penalties already imposed in this case. Third, the Government's memorandum completely ignored the findings of a wholly independent, Court-ordered psychiatrist, and this omission is telling.

**1.   The Gravamen of This Case Is FCPA Bribery, Which Has A Five-Year Maximum Sentence**

As the Government has made clear in its sentencing memorandum, the gravamen of this case is the bribery scheme. While the defendant was convicted of circumventing Goldman's accounting (Count Two) and money laundering (Count Three), the conduct that the Government deems worthy of extreme punishment relates to the bribery count. Specifically, the Government argues that the bribery scheme in this case is so massive, so damaging and so brazen that Mr. Ng deserves a fifteen-year sentence. For example, the Government wrote:

**BRAFMAN & ASSOCIATES, P.C.**

> The defendant [and] his co-conspirators stole that money and enabled the corruption of officials in two countries, which caused real and lasting harm far beyond the dollars that were stolen. Foreign corruption undermines the public's confidence in international markets and institutions, it destroys people's faith in their leaders and it is deeply unfair to everybody else who plays by the rules. And when, as here, foreign corruption is undertaken by the defendant and others working for an American bank operating overseas, it impacts the confidence and trust in American business worldwide.

(ECF 229, Gov't Sent. Memo. at 2.)

In asking for a fifteen-year sentence, the Government then wrote that the sentence in this case must "send a message to other professionals in the financial world who are tempted to gain an advantage or to win business through cheating and bribery." (Id.) Additionally, and linking a harsh sentence to general deterrence, the Government wrote, "given the strong economic incentives in taking advantage of countries with public officials willing to trade contracts for kickbacks, it is critical that there by equally strong counterincentives." (Id. at 71.) However, while the Government may believe that Mr. Ng deserves fifteen years due to the size and nature of this FCPA bribery scheme, Congress has established a five-year maximum sentence for FCPA bribery. Regardless of whether the bribe is $1 or $10 billion, or whether the public official is a prime minister or a filing clerk, and regardless of the consequences of the bribery, the statutory maximum sentence for FCPA bribery is five years.

Also, while the Government argues that harsh punishment is appropriate because an American company was "taking advantage of (Malaysia) with public officials willing to trade contracts for kickbacks," this argument can only be leveled at Goldman, and not at Mr. Ng, who was in Malaysia because he is Malaysian. The Government already sent its message to the world about Goldman when it accepted its money in exchange for a deferred prosecution agreement.

2. **The Government of Malaysia Has Been Made Whole**

The Government's sentencing memorandum makes much of the supposed effects of the 1MDB theft on the people of Malaysia. (See, e.g., Gov't Sent. Memo at 1 (decrying the "scheme that stole billions of dollars intended for infrastructure and economic projects to aid the Malaysian people"); id. at 2 ("the money was supposed to go to help the people of Malaysia on a national level: to build roads, to improve the country's power grids, and to better their lives").) But as the Government has acknowledged, this money has been repatriated to the Government of Malaysia. Accordingly, the coffers of the Malaysian government have been made whole, and so any supposed negative effect on the people of Malaysia from the 1MDB theft should not be used as a basis to further punish Mr. Ng.

BRAFMAN & ASSOCIATES, P.C.

### 3. That the Government's 89 Page Sentencing Memorandum Ignored the Findings of the Court-Ordered, Court-Appointed Psychiatrist Speaks Volumes

It was the Probation Officer who recommended that Mr. Ng get mental health treatment. This led to his being treated by a psychiatrist chosen by Court personnel. Defense counsel had no role in choosing any of the mental health professionals who treated Mr. Ng. The wholly independent, Court-ordered psychiatrist wrote a report, Exhibit 24 to the Defendant's sentencing memorandum, and the Government fails to acknowledge her findings in its 89-page memorandum. (See Gov't Sent. Memo at 82: "The record, in short, supports the conclusion that the defendant is anxious and/or depressed at the thought of punishment, for which he is receiving treatment. That fact is not unique….") The entirety of the psychiatrist's report is critical. However, several of the findings of the doctor – all of which went wholly unrebutted or acknowledged by the Government – are as follows:

i. Mr. Ng's "experiences of confinement in Malaysia rise to the level of Criterion A of PTSD" (Def.'s Sent. Memo. Ex. 24 (Psychiatric Evaluation), at 6);
ii. That because Mr. Ng "suffers from PTSD and has frequent dissociation from reality, he sometimes appears unengaged in the conversation or distant from the emotions associated with his trauma. This is a hallmark of PTSD and is a primitive defense mechanism that occurs when he is flooded emotionally and feels completely incapacitated by his experiences." (Id.)
iii. That Mr. Ng's "PTSD is likely going to be exacerbated by confinement and by any experiences that reactivate his trauma." (Id.)
iv. "It is likely that his PTSD is chronic in nature, and he will decompensate in times of stress and in situations that reactivate his trauma." (Id.)

Few things are more important to ensuring fundamental human rights than how a Government treats those who are suffering from mental illness and are unusually vulnerable as a result. We have provided an objective report from an independent psychiatrist chosen by the Court that Mr. Ng suffers from a substantial mental health condition, recognized as such in the DSM-5, and that further incarceration would exacerbate this serious mental health condition.

### 4. Conclusion

For the reasons set forth above and in our principal sentencing memorandum, we respectfully ask for a sentence of time-served.

Respectfully submitted,

Marc A. Agnifilo

cc: Counsel for the Government (via ECF and email)