

U.S. Department of Justice

United States Attorney
Eastern District of New York

F.#2016R00467  
AES/DGR/DAS

271 Cadman Plaza East  
Brooklyn, New York 11201

March 15, 2023

By ECF

The Honorable Margo K. Brodie  
Chief United States District Judge  
United States District Court  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:    United States v. Ng Chong Hwa  
              Criminal Docket No. 18-538 (S-2) (MKB)

Dear Judge Brodie:

      The government submits this letter in further support of the government's request for the Court to order forfeiture in the amount of $35.1 million as part of the defendant's sentence (see Proposed Order of Forfeiture (ECF No. 228); Government Sentencing Memorandum (ECF No. 229 ("Gov't Sent. Mem.")) at 51-56; Government Letter re Forfeiture (ECF No. 234 ("Gov't Let."))), and in response to the defendant's March 13, 2013 letter regarding forfeiture (ECF No. 235 ("Def. Let.")). The defendant makes several arguments in support of the proposition that, despite the fact that forfeiture is mandated by statute in the full amount of the defendant's ill-gotten gains (see Gov't Let. at 1-3), and despite the fact that the defendant has provided no legal or factual basis for his position, the Court should nevertheless order no forfeiture in this case. For the reasons discussed below, the defendant's arguments are without merit, and should be rejected in their entirety.

      First, the defendant repeatedly misstates the government's burden with respect to forfeiture. The defendant broadly alleges—without citation to any legal authority—that the government "has not satisfied its burden to establish the total amount [the defendant] has already relinquished to government authorities" and that the government has "offered no facts whatsoever to meet its burden of proof" that "Malaysia imposed restitution, and not forfeiture, on [the defendant]." (Def. Let at 3-4). The defendant is wrong. Forfeiture is mandatory pursuant to statute: if the defendant is convicted of an offense giving rise to forfeiture, the court "shall" order forfeiture as part of the sentence. 18 U.S.C. § 982; 28 U.S.C. § 2461(c); see Gov't Let. at 1-2 (collecting cases); Pre-Sentence Report dated Jan. 10, 2023 ("PSR") ¶¶ 159-60. The defendant's argument also ignores the Second Circuit precedent cited in the government's filing, which states that the government's burden is simply to prove the amount of forfeiture sought to be imposed by a preponderance of the evidence. See United States v. Capoccia, 503 F.3d 103, 116 (2d Cir. 2007); United States v. Bellomo, 176 F.3d 580, 595 (2d Cir. 1999)). In meeting that

1

burden, the forfeiture amount may be reasonably estimated by evidence already in the record. See Capoccia, 503 F.3d at 109; United States v. Roberts, 660 F.3d 149, 166 (2d Cir. 2011). And where the defendant does not have the assets available to satisfy a forfeiture order, forfeiture may be sought in the form of a money judgment. See United States v. Awad, 598 F.3d 76, 78 (2d Cir. 2010); United States v. Kalish, 626 F.3d 165, 168-69 (2d Cir. 2010)).[1] Where the government has met its burden, forfeiture must be imposed. United States v. Monsanto, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied . . . .").

Here, the defendant's offenses of conviction indisputably give rise to the mandatory imposition of forfeiture, requiring that the Court "shall" order such forfeiture. (See Gov't Let. at 3; PSR ¶¶ 159-60). The government clearly demonstrated at trial, by far more than the preponderance standard required, that the defendant received $35.1 million in ill-gotten gains from his role in the charged conspiracies. (See Gov't Let. at 3; Gov't Sent. Mem. at 51-56). As a result, the government has met its burden to seek—and the Court is required to enter—a money judgment in the amount of $35.1 million. That is the end of the analysis.

Second, the defendant contends that he does not have to pay forfeiture here because other sovereigns, Singapore and Malaysia, have already forfeited the ill-gotten gains he received. (Def. Let. at 1). As discussed below, the monies that were repaid to 1MDB do not represent all of the ill-gotten gains that the defendant received, nor are they properly characterized as forfeiture. However, even if those monies could be considered forfeiture, the defendant misstates the law; based on the dual sovereignty doctrine, the fact that a defendant has forfeited money to a foreign sovereign does not bar collection pursuant to mandatory forfeiture obligations in the United States. See United States v. Williams, 519 F. App'x 303, 304 (5th Cir. 2013). The only exception to this doctrine was established in Bartkus v. Illinois, 359 U.S. 121 (1959), which applies "when one prosecuting sovereign can be said to be acting as a tool of the other." United States v. All Assets of G.P.S. Auto. Corp., 66 F.3d 483, 495 (2d Cir. 1995) (internal quotation marks omitted). This exception is exceedingly limited; as the Second Circuit explained, the exception "applies only in an 'extraordinary type of case,' perhaps only when one sovereign has essentially manipulated another sovereign into prosecuting." Id. at 495. The burden is on the defendant, not the government, to show that the Bartkus exception applies. United States v. Castro, 659 F. Supp. 2d 415, 419 (E.D.N.Y. 2009) (citing United States v. Coonan, 938 F.2d 1553, 1563 (2d Cir. 1991)).

---

[1] The defendant suggests that it is improper for the government to seek a forfeiture money judgment in this case, citing United States v. Nejad, 933 F.3d 1162 (9th Cir. 2019). See Def. Let. at 5 n.2. Nejad, in fact, supports the availability of a forfeiture money judgment here. 933 F.3d at 1165 ("[O]ur rationale for allowing district courts to impose personal money judgments remains undisturbed . . . . We have regarded such judgments as necessary to avoid undermining Congress' objectives in enacting mandatory forfeiture sanctions . . . ."). See also Awad, 598 F.3d at 78-79 ("A contrary interpretation could have the undesirable effect of creating an incentive for an individual involved in a criminal enterprise to rid himself of his ill-gotten gains to avoid the forfeiture sanction.") (citation and internal quotation marks omitted).

2

Here, the defendant has utterly failed to carry its burden to demonstrate that Singapore and Malaysian authorities were acting as a tool of the U.S. Department of Justice when the defendant and his family made the claimed payments to them, as is required to invoke the <u>Bartkus</u> exception to the dual sovereignty doctrine. In fact, the defendant cannot establish that the payments to 1MDB were forfeiture payments at all, rather than restitution. It is not the government's burden to prove that the defendant and/or his family members paid some amount of money to another sovereign that for some reason should be considered forfeiture by this Court. Instead, it is the defendant—who, as the person who stole the money from 1MDB and laundered it through accounts in the names of his family members, is in the best position to provide an accounting of what was in the eleven accounts that were seized by Singapore and liquidated to provide restitution to 1MDB—who must demonstrate that he is entitled to such relief. That he has not done so by, for example, providing <u>any</u> documentation of the assets that were in the seized accounts in 2018, <u>any</u> factual basis to conclude that the payments constituted forfeiture rather than restitution, or <u>any</u> legal basis that an offset is permitted here, is entirely his failing.

As a result, the arguments that the defendant now makes about the government's efforts to provide the Court with additional information about the monies that were repatriated from the accounts of the defendant's family members to 1MDB should be disregarded. For example, the defendant complains at length about the fact that the government conferred with authorities in Singapore on an expedited basis last week in an attempt to provide the Court with an estimate of the amount of money that may have been returned to 1MDB as restitution, arguing that those efforts were made "ex parte," that they do not amount to "reliable" information and that the government cannot answer questions like whether the figure includes the valuation of securities that were allegedly in the accounts held by the defendant's family members. (<u>See</u> Def. Let. at 3). To be clear, the government was under no obligation to make these efforts, because—again—the government bears no burden with respect to <u>the defendant's</u> wholly unsubstantiated arguments about any offsets. That the government made such efforts is a testament to the seriousness and diligence with which it has approached this matter; it does not somehow shift the burden to the government to prove up facts that the defendant has chosen not to. Moreover, such facts are entirely irrelevant to the government's burden to show that forfeiture should be ordered here, which has already been met. Given that the burden relies with the defendant to prove any offset, and he has failed to do so, the Court may conclude its analysis here.

<u>Third</u>, even if the Court were to ignore the defendant's failure to meet his burden as discussed above, his remaining arguments fail nonetheless. The defendant contends that the "money taken by Malaysia with the assistance of Singapore was and should be viewed by the court as forfeiture" and that such amount "was in excess of $35 million." (Def. Let. at 1). This argument is contradicted by the very evidence the defendant has submitted. As set forth in the government's opening brief, on October 30, 2018, the defendant's wife, mother-in-law, and brother-in-law signed statutory declarations under Singaporean law concerning multiple bank accounts in Singapore that had been seized by local law enforcement authorities. In the declarations, each consented to Singapore liquidating and transferring the assets in the accounts "to account(s) as may be determined by 1Malaysia Development Berhad." (Statutory Decl., Def. Sentencing App'x, Ex. 1, ECF No. 225-1). Consistent with those declarations, law enforcement authorities in Singapore sought and obtained court orders that 1MDB was entitled to the assets and that the assets could be liquidated and transferred to a bank account in Malaysia that had

been identified by 1MDB and which had been opened to receive funds from 1MDB-related asset recovery efforts. These factors clearly establish that the payments to 1MDB amounted to restitution, and there is no basis whatsoever to conclude that the payments to 1MDB—the entity from which the money was embezzled—somehow amounted to forfeiture, let alone forfeiture that should be credited towards amounts owed to the United States. And, for the reasons detailed in the government's initial letter, because the payments to 1MDB were restitution, they may not be offset against the defendant's mandatory forfeiture obligation. See Gov't Let. at 2-3, 5; United States v. Bodouva, 853 F.3d 76, 78-79 (2d Cir. 2017); United States v. Pratt, No. 17-CR-262 (MKB), 2018 WL 2871840, at *4 (E.D.N.Y. June 11, 2018).[2]

    Finally, the defendant argues that entry of the forfeiture money judgment sought by the government is improper because the government has not complied with the substitute asset provisions codified at 21 U.S.C. § 853(p). (Def. Let. at 5). The defendant is again wrong. Indeed, as one of the cases upon which the defendant relies makes clear, the government is required to comport with these provisions only when seeking to forfeit specific substitute assets to satisfy a money judgment. Nejad, 933 F.3d at 1166 ("[O]nce the government identifies untainted property that it believes may be used to satisfy a personal money judgment, it must return to the district court and establish that the requirements of § 853(p) have been met."); see also United States v. Lo, 839 F.3d 777, 792 (9th Cir. 2016) (substitute asset requirements of Section 853(p) do not apply to entry of money judgments); United States v. Roberts, 696 F. Supp. 2d 263, 268 n.3 (E.D.N.Y. 2010) (when government seeks money judgment, it need not satisfy requirements of Section 853(p)), aff'd in part, vac'd in part, 660 F.3d 149, 153 (2d Cir. 2011).[3]

---

[2]  The defendant notes that the "Supreme Court has not yet passed on the propriety" of "double-counting of restitution and forfeiture." (Def. Let. at 5-6 n.5). It is therefore axiomatic that Second Circuit law upholding the concomitant imposition of forfeiture and restitution remains binding precedent. Kalish, 626 F.3d at 169 ("We see no infirmity in the . . . imposition of both a forfeiture remedy and a restitution remedy. These remedies are authorized by separate statutes, and their simultaneous imposition offends no constitutional provision.").

[3]  The defendant also suggests in a footnote, for the first time, that the government's proposed forfeiture order would "violate the 8th Amendment on excessive fines," and suggests that the defendant has not had time to raise this issue because of the "abbreviated briefing schedule." (Def. Let. at 5 n.2). The defendant—who, as noted above, is in the best position to know and provide documentary support for the assets in his family's own accounts and has chosen not to do so—has been on notice that the government may seek forfeiture since the release of the PSR on January 10, 2023; made no mention of this argument in his objections to the PSR filed on January 27, 2023; chose not to address forfeiture at all in his sentencing memorandum, or to respond to the government's sentencing memorandum with respect to forfeiture; and did not raise this argument at the sentencing hearing. Moreover, it is well established that the forfeiture of criminal proceeds can never be considered constitutionally excessive. See United States v. $185,336.07, 731 F.3d 189, 194 (2d Cir. 2013) (Eighth Amendment does not apply to forfeitures of drug proceeds); United States v. Guillen-Cervantes, 566 F. App'x 576, 579 (9th Cir. 2014) (forfeiture money judgment for proceeds of alien

4

\*\*\*\*

For the foregoing reasons and those stated in the government's March 10, 2023 letter, the Court should enter a forfeiture money judgment in the amount of $35.1 million against the defendant.

                 Respectfully submitted,

                 BREON PEACE
                 United States Attorney

By:    /s/
                 Alixandra E. Smith
                 Drew G. Rolle
                 Dylan A. Stern
                 Tanisha R. Payne
                 Assistant U.S. Attorneys

                 BRENT WIBLE
                 Chief, Money Laundering and
                   Asset Recovery Section
                 Department of Justice

                 GLENN LEON
                 Chief, Fraud Section
                 Department of Justice

cc:  Clerk of the Court (MKB) (by email and ECF)
    Counsel for the defendant (by email and ECF)

---

smuggling is considered "non-punitive" and "thus falls outside the ambit of the Eighth Amendment"); United States v. Betancourt, 422 F.3d 240, 250-51 (5th Cir. 2005) ("Eighth Amendment has no application to the forfeiture of property acquired with proceeds"); United States v. 16614 Cayuga Rd., 69 F. App'x 915, 919-20 (10th Cir. 2003) (forfeiture of proceeds can never be considered constitutionally excessive); United States v. Powell, 2 F. App'x 290, 294 (4th Cir. 2001) (same).